SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

OCWEN FINANCIAL CORPORATION, a Delaware corporation;
"Additional Parties Attachment Form is attached"

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

WILLIAM J. DOHERTY, an individual;
"Additional Parties Attachment Form is attached"

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| **CONFORMED COPY** |
| **ORIGINAL FILED** |
| Superior Court Of California |
| County Of Los Angeles |
| JUL 16 2014 |
| Sherri R. Carter, Executive Officer/Clerk |
| By: Judi Lara, Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: Los Angeles County Superior Court<br>*(El nombre y dirección de la corte es)*<br>111 North Hill Street, Los Angeles, CA 90012<br>Stanley Mosk Courthouse | CASE NUMBER:<br>*(Número del Caso):*<br>**BC 5 5 1 7 8 8** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Erikson M. Davis, Esq.  Real Estate Law Center, 695 S. Vermont Ave., L.A., CA 90005   Tel: 213-201-6352

| DATE:<br>*(Fecha)* | **SHERRI R. CARTER** Clerk, by<br>*(Secretario)* Judi Lara | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Ocwen Loan Servicing, LLC

under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 8/12/14

[SEAL] JUL 16 2014

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

SUM-200(A)

| SHORT TITLE:<br>WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP. et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive

Page ___1___ of ___2___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP. et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

JUDITH BRUSATORI, an individual; FLORISCILLA ENRIQUEZ, an individual;
DANTE EVANGELISTA, an individual; JACK HANEY, an individual; CRAIG HARRIS, an individual;
TODD HEYDA, an individual; SHAFIDUL ISLAM, an individual; DEBBIE LOVE, an individual;
TABITHA MCLENON, an individual; OSCAR NELSON, an individual; DON NIEMCZUK, an individual;
RUTH O'CALLAGAN, an individual; SERGIO OCHOA, an individual; KENNETH C. PETTIJOHN, an
individual; BENJAMIN PONCE DE LEON, an individual; ROSA RIOS, an individual;
LEO VIGILDO SOLANO, an individual; MICHAEL STEELE, an individual; THOMAS STEWART, an
individual; BERNICE LEINAALA TAM, an individual; ERICA TATE, an individual;
CHRISTOPHER PAUL VANDENBORRE, an individual; and RICHARD WOLFFER, an individual

Page __2__ of __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Erikson M. Davis (SBN 197841)<br>REAL ESTATE LAW CENTER, PC<br>695 South Vermont Avenue, Suite 1100<br>Los Angeles, CA 90005<br>TELEPHONE NO.: 213-382-3250   FAX NO.: 213-835-1995<br>ATTORNEY FOR (Name): Plaintiffs WILLIAM J. DOHERTY, et al. | FOR COURT USE ONLY<br><br>**CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>**JUL 16 2014**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Judi Lara, Deputy |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>**BC 5 5 1 7 8 8** |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[✓] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): 7
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 15, 2014

Erikson M. Davis
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

| SHORT TITLE: WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP., et al | CASE NUMBER BC 5 5 1 7 8 8 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10   ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP., et al | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP., et al | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: WILLIAM J. DOHERTY, et al. v. OCWEN FINANCIAL CORP., et a | CASE NUMBER |
|---|---|

**Item III.** *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. ☐1. ☐2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 500 East 2nd Street |
|---|---|
| **CITY:** Los Angeles | **STATE:** CA    **ZIP CODE:** 90012 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk Courthouse courthouse in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: July 15, 2014 _____

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5.  Payment in full of the filing fee, unless fees have been waived.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

1    Erikson M. Davis (SBN 197841)
    REAL ESTATE LAW CENTER, PC
2    695 South Vermont Avenue, Suite 1100
    Los Angeles, California 90005
3    Phone: 213-382-3250
    Fax: 213-632-1523
4    erikson@lenderlawlitigation.com

5    Attorneys for Plaintiffs

6

7

8                  **SUPERIOR COURT OF CALIFORNIA**

           **COUNTY OF LOS ANGELES -- Central District**

9

10

11  WILLIAM J. DOHERTY, an individual;
    JUDITH BRUSATORI, an individual;
12  FLORISCILLA ENRIQUEZ, an individual;
    DANTE EVANGELISTA, an individual;
13  JACK HANEY, an individual;
    CRAIG HARRIS, an individual;
14  TODD HEYDA, an individual;
    SHAFIDUL ISLAM, an individual;
15  DEBBIE LOVE, an individual;
    TABITHA McLENON, an individual;
16  OSCAR NELSON, an individual;
    DON NIEMCZUK, an individual;
17  RUTH O'CALLAGHAN, an individual;
    SERGIO OCHOA, an individual;
18  KENNETH C. PETTIJOHN, an individual;
    BENJAMIN PONCE DE LEON, an individual;
19  ROSA RIOS, an individual;
    LEO VIGILDO SOLANO, an individual;
20  MICHAEL STEELE, an individual;
    THOMAS STEWART, an individual;
21  BERNICE LEINAALA TAM, an individual;
    ERICA TATE, an individual;
23  CHRISTOPHER PAUL VANDENBORRE, an
    individual; and
23  RICHARD WOLFFER, an individual,
24
             Plaintiffs,
25
      vs.
26
27  OCWEN FINANCIAL CORPORATION, a
28

Case No.  **BC 551788**

**COMPLAINT FOR DAMAGES FOR:**

1.  **FRAUD;**
2.  **CONSPIRACY TO COMMIT FRAUD;**
3.  **CONVERSION;**
4.  **CONSPIRACY TO CONVERT;**
5.  **VIOLATION OF ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (Civ. Code, § 1788, et seq.);**
6.  **UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code § 17200, et seq.);**
7.  **UNJUST ENRICHMENT**

**JURY TRIAL DEMANDED**

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

JUL 16 2014

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

- 1 -

Delaware corporation; OCWEN LOAN
SERVICING, LLC, a Delaware limited liability
company; and DOES 1 through 25, inclusive,

      Defendants.

## Introduction

1.     This litigation concerns the purported servicing of home loans by Defendants OCWEN FINANCIAL CORPORATION and OCWEN LOAN SERVICING, LLC, along with Defendants DOES 1 through 25. These loans at issue were previously originated by one or more lenders, but these lenders and the origination of these loans are *not* the subjects of this lawsuit.

2.     Plaintiffs allege that Defendants herein have engaged in a ***systemic*** scheme to defraud homeowners (including Plaintiffs herein) out of money in the form of purported monthly loan payments that these Defendants had and have no legal right or servicer authority to be demanding in the form of monthly loan bills or to be collecting from any Plaintiffs for the mortgage loans at issue herein.[1] Thus, any monies collected by Defendants as the purported "servicers" of Plaintiffs' home loans at issue were obtained fraudulently, unfairly and in violation of multiple state statutes.

## Basis For Plaintiffs' Allegations

3.     Lenders securitize home loans in order to convert non-liquid thirty-year mortgage loans into relatively safe, immediately liquid securities (certificates, bonds, or stock) that can be bought, sold, and traded on Wall Street. Lenders originate mortgage loans and pool them together to be sold into residential mortgage-backed securities ("RMBS's"), which in turn create a constant flow of new money for the funding of new loans. The RMBS's are divided into sections ("tranches") that can be bought and sold by bond holders.[2]

4.     In order to affect the special tax benefits that came when a non-liquid mortgage or deed of trust (and note) is transformed into a security, these RMBS's are subject to a series of tax

---

[1] This Complaint will refer to "mortgages" and "trust deeds" interchangeably, being that, in California, courts have held there is no material difference between these two terms.
[2] A tranche is a division of an asset pool that shares characteristics with other assets and is part of a larger offering.

COMPLAINT FOR DAMAGES

laws know as the Real Estate Mortgage Investment Conduit ("REMIC Act").[3]  The REMIC Act

articulated the tax benefits of the RMBS and protected the RMBS from bankruptcy.[4]  Investment

banks observe the REMIC Act so that they may operate without the hindrance of banking

regulations, avoid liability and tax issues, and increase profits by pooling and reselling borrowers'

notes to investors of Real Estate Investment Trusts ("REITs") in the form of securities.

     5.     The REMIC Act allowed an RMBS to legally achieve "bankruptcy remoteness" if

*two* "true sales" of the loans occurred.[5]  With each of the two required "true sales," the REMIC

Act requires that the note be transferred and endorsed to the next party by the previous assignee of

record.  With each of the two "true sales," the REMIC Act requires that the mortgage or deed of

trust be assigned to the buyers of the note with a recorded assignment.

     6.     A "true sale" effecting securitization of borrowers' debt instruments required

observance of 1) New York State law, 2) the express terms of the REIT's Pooling and Servicing

Agreement ("PSA"), 3) the Mortgage Loan Purchase Agreement ("MLPA"), and 4) the Uniform

Commercial Code ("UCC").[6]

     7.     A mortgage loan that is securitized and registered with the Securities and Exchange

Commission ("SEC") is also referred to as a "Special Purpose Vehicle" "SPV") and is forever

after considered a security with the accompanying tax liability.[7]

     8.     Mortgage Electronic Registration Systems ("MERS") is a shell corporation created

by the nation's biggest lenders in 1995 as a response to the restrictive rules of the REMIC Act.[8]

These lenders created MERS to circumvent the REMIC Act and to avoid having to physically

---

[3] 28 USC § 860 et al.

[4] *Ibid.*

[5] A "true sale" is when one party owns the note and another party buys the note after the buyer made an offer that the seller accepted and the buyer gave compensation to the seller.

[6] The PSA is a trust Agreement that governs the relationship between the various parties in the securitization process and is required to be filed by the parties under penalty of perjury with the United States Securities and Exchange Commission. The PSA is the contract that governs the relationship between the various parties in the securitization process.  The PSAs in many securitization deals can run three-hundred (300) to five-hundred (500) pages in length, spelling out the duties and obligations of each party and the mechanics by which the actual securitization is accomplished.

[7] Internal Revenue Code § 860D(b)(1) states that once an entity elects to be treated as a SPV, with the concurrent tax exemption, it retains that status permanently.  *"Double Dipping"* occurs when a bank converts a mortgage into a security (unsecured debt) and receives the concurrent tax benefits of a REMIC and *then* attempts to also claim that it exists as a mortgage (secured debt).  "Double Dipping" amounts to tax and securities fraud.

[8] Shell corporations are legal entities without active business operations or assets that often facilitate tax avoidance for legitimate businesses. MERS is a corporation set up to allow lenders to benefit from the REMIC Act, and avoid taxes that way, while also avoiding recording fees. (http://www.investopedia.com/terms/s/shellcorporation.asp#ixzz2EtUlkVWG)

3

1    endorse and assign a note, physically transfer a note to each new owner, and physically *record* the

2    assignment of a note to each of the different parties to the securitization as the REMIC Act

3    required. Lenders generally seek to circumvent the recording requirements of the REMIC ACT

4    because the reality of securitization was and is that one borrower's note might be sold ten or

5    twenty times resulting in millions (and eventually billions) of dollars in recording fees that the

6    lenders sought to avoid.

7        9.     MERS is an artifice embedded into borrowers' deeds of trusts and mortgages as "a

8    separate corporation that is acting solely as a nominee for the Lender and the Lender's successors

9    and assigns," but MERS actually functions as the computer arm of every lender that uses the

10    MERS system.

11        10.    The nation's lenders have utilized MERS as a computer agent not subject to agency

12    law since the identity of the principal responsible for the acts of the agent remains hidden even

13    when documents are recorded.[9] In non-judicial foreclosure states, such as California, where the

14    foreclosure scheme rests purely on the notice received by borrowers through recorded documents,

15    this has made it impossible for borrowers (or their attorneys) to know the Holder In Due Course

16    ("HIDC") of a borrower's note without civil litigation and sometimes not even then.

17        11.    The Trustee of a REIT (or SPV) has a valid and enforceable claim against a

18    borrower's property only if all requirements of the PSA are met. These include:

19        i.     A complete and unbroken chain of endorsements and transfers of the note

20        from and to each party to the securitization transaction prior to the closing date of the

21        REIT; and

22        ii.    Actual physical possession of the note by the Trustee of the REIT at the

23        point in time when all endorsements and assignments have been completed.

24        12.    A "true sale" also provides the SPV with Holder in Due Course (HIDC) status and

25    protections, but in order to claim HIDC status, the SPV must satisfy the requirements of UCC § 3-

---

[9] See: *Bain v. Metropolitan Mortgage Group et al*, Supreme Court of the State of Washington, filed August 16, 2012; case number: 86206-1 (http://www.courts.wa.gov/opinions/pdf/862061.opn.pdf).

4

COMPLAINT FOR DAMAGES

1  302 (defining HIDC) and the HIDC (the SPV) must take the instrument free from notice that

2  another party has a defense or claim in recoupment.

3       13.    The main benefit of HIDC status is that the HIDC may enforce the payment rights

4  under the negotiable instrument free from all but a limited number of defenses as outlined in UCC

5  § 3-305.  In addition to the benefit of tax exemption, and the freedom to operate without the

6  hindrance of banking regulations, the HIDC takes the note or instrument free from competing

7  claims of ownership by third parties.

8       14.    Because the PSA of a REIT requires that all endorsements, transfers, and

9  assignments of the note occur prior to the closing date of the REIT or MBS, courts have held that

10  allegations of improper timing of these events can give a borrower a valid claim for challenging a

11  lender's standing to collect money or foreclose.  (See, e.g., *Vogan v. Wells Fargo Bank, N.A.* (E.D.

12  Cal. 2011) WL5826016, LEXIS132944, pp. 17-18 ["Plaintiffs alleged that the recorded assignment

13  was executed well after the closing date of the MBS to which it was allegedly sold, giving rise to a

14  plausible inference that at least some part of the recorded assignment was fabricated"].)

15       15.    Here, Plaintiffs do not dispute any entity's right to securitize the original mortgages

16  at issue herein, nor do Plaintiffs allege that the securitization process itself renders a promissory

17  note null and void or otherwise unenforceable.  Further, Plaintiffs are not attempting to

18  "challenge" any act of securitization or any PSA related thereto.

19       16.    Plaintiffs simply allege that, as a result of the improper and illegal procedures

20  described elsewhere in this Complaint, and the mass chaos resulting from Plaintiffs' notes and trust

21  deeds having changed hands multiple times since origination, the true owner of each mortgage for

22  each Plaintiff is unclear and very much in dispute.

23       17.    Further, while lenders may have ***attempted*** securitization of Plaintiffs' loans at

24  issue, in truth these lenders failed to do so properly and completely under the law, being that they

25  did not follow the requirements of the relevant governing PSA.  The lending banks that originated

26  Plaintiffs' home loans at issue further violated New York trust law in attempting but failing to

27  accomplish such securitization of Plaintiffs' mortgages.  As a result, at the very least, Plaintiffs

28

COMPLAINT FOR DAMAGES

1  allege, they have been paying to Defendants loan payments for years that Defendants are not

2  legally or contractually entitled or authorized to be demanding or accepting.

3  **Parties**

4  *Defendants*

5  18.    At all material times hereto, Defendant OCWEN FINANCIAL CORPORATION

6  ("OFC") was and is a provider of residential and commercial mortgage loan servicing, special

7  servicing and asset management services.  Defendant OFC claims to be the largest subprime

8  mortgage servicer in the United States.  Defendant OFC is headquartered in Atlanta, Georgia, with

9  additional offices in West Palm Beach and Orlando, Florida; Houston, Texas; St. Croix, the U.S.

10  Virgin Islands; and Washington, D.C.

11  19.    Defendant OCWEN LOAN SERVICING, LLC ("OLS") engages in servicing

12  residential mortgage loans.  Its loan servicing includes customer service, collections, investor

13  accounting, escrow, loss mitigation, foreclosure, and property disposition.  Defendant OLS

14  services mortgage-backed securitized and unsecuritized loans and securities.  Defendant OLS was

15  founded in 1989 and is based in West Palm Beach, Florida, and is a wholly owned subsidiary of

16  Defendant OFC.

17  20.    Plaintiffs are unaware of the true names and capacities of the Defendants sued

18  herein as DOES 1 through 25, and therefore sue these Defendants by such fictitious names.

19  Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of these

20  Defendants once such information is ascertained.  Plaintiff is informed and believes and thereon

21  alleges that each of these fictitiously named is responsible in some manner for the wrongful

22  conduct alleged.

23  21.    Plaintiffs are informed and believe and thereon allege that each Defendant herein at

24  all times relevant was and is an agent for the other Defendants herein, and acted under such course

25  and scope, with knowledge and consent of each of the other Defendants.

26

27

28

COMPLAINT FOR DAMAGES

*Plaintiffs*

22. Plaintiff WILLIAM J. DOHERTY is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7141500780.

23. Plaintiff JUDITH BRUSATORI is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 477501787.

24. Plaintiff FLORISCILLA ENRIQUEZ is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7100104269.

23. Plaintiff DANTE EVANGELISTA is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7140344388.

24. Plaintiff JACK HANEY is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. .

25. Plaintiff CRAIG HARRIS is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7100853758.

26. Plaintiff TODD HEYDA is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7090298782.

27. Plaintiff SHAFIDUL ISLAM is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 714125614.

28. Plaintiff DEBBIE LOVE is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7190317649.

7

29.     Plaintiff TABITHA McLENON is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7141135835.

30.     Plaintiff OSCAR NELSON is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 34935874.

31.     Plaintiff DON NIEMCZUK is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7472299353.

32.     Plaintiff RUTH O'CALLAGHAN is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7130120582.

33.     Plaintiff SERGIO OCHOA is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loans that Defendants have designated as Loan Nos. 11789351 and 359432807.

34.     Plaintiff KENNETH C. PETTIJOHN is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7440543387.

35.     Plaintiff BENJAMIN PONCE DE LEON is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7110707853.

36.     Plaintiff ROSA RIOS is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7091177696.

37.     Plaintiff LEO VIGILDO SOLANO is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 359327556.

8

38.     Plaintiff MICHAEL STEELE is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7190871462.

39.     Plaintiff THOMAS STEWART is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7170300656.

40.     Plaintiff BERNICE LEINAALA TAM is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7091366950.

41.     Plaintiff ERICA TATE is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 706958790.

42.     Plaintiff CHRISTOPHER PAUL VANDENBORRE is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 7141614185.

43.     Plaintiff RICHARD WOLFFER is a competent adult.  During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. 70383740.

48.     Plaintiffs and each of them jointly file the instant lawsuit, with each having individual claims against Defendants, as a permissive joinder of parties and claims pursuant to Code of Civil Procedure sections 378(a) & (b), and 427.10 et seq.

## Common Allegations

49.     The PSAs governing REITs require that all endorsements, transfers, and assignments of the note occur prior to the closing date of the REIT, and also that they be recorded (with the appropriate county recorder) prior to the closing date of the REIT.  However, this was routinely not done by the lenders that originated the home loans at issue herein.

50.    Plaintiffs further allege that the failure to record the assignment of their loans into the individual REITs at issue herein was *also* a violation of state recording statutes, repeated multiple times as notes were divided into tranches, paid off, and resold without assignment (recorded or otherwise) from one REIT to another.

51.    Plaintiffs are informed, believe, and thereupon allege that the failure to record an assignment of a loan into a REIT before the closing date calls into question whether the assignee (the REIT) took the debt "without notice that any party has a defense or claim in recoupment" pursuant to UCC § 3-305(a)(3).

52.    Plaintiffs are informed, believe, and thereupon allege that this confusion, intentionally created and sustained by the lenders originating their home loans, has the added benefit (to the lenders) of concealing the splitting of Plaintiffs' notes and deeds of trust into separate entities.

53.    Plaintiffs are informed, believe, and thereupon allege that assignments of Plaintiffs' loans into a REIT years after the closing date of the REIT, in order to retroactively create a proper chain of assignments after a borrower defaults and in anticipation of foreclosure is prima facie evidence of a controversy as to the HIDC of the NOTE.  Plaintiffs allege that a REIT that accepts an assignment years after the closing date of the trust is in violation of the PSA governing the trust, and cannot claim a "true sale" as required by the PSA.

54.    Plaintiffs are informed, believe, and thereupon allege that a REIT that accepts an assignment years after the closing date of the trust, when the assignments occur simultaneously with a notice of default against plaintiffs and only *because* of foreclosure cannot claim to have taken the assignment free of controversy and "without notice that any party has a claim or defense in recoupment" as is required by UCC § 3-302(a)(1).

55.    Plaintiffs are informed, believe, and thereupon allege that Defendants have falsified recorded documents, failed to perform, and hidden their failures to perform by use of MERS.

COMPLAINT FOR DAMAGES

56.     Plaintiffs are informed, believe, and thereupon allege that the use of MERS has led to Plaintiffs' claim of a "property or possessory right in the instrument or its proceeds including a claim to rescind" pursuant to UCC §3-306.

57.     It is well-established California law that a lender or its agent need not produce a homeowner's promissory note in order to foreclose.  (See Civ. Code, § 2924 [nonjudicial foreclosure proceedings can be instituted by "the trustee, mortgagee, or beneficiary, or any of their authorized agents"].)

58.     However, whether the foreclosing entity holds the physical note in hand or not, they must still be the lawful HIDC of the note, or its authorized agent, that takes the note free from a "defense" or "claim in recoupment" pursuant to UCC § 3-305(a).

59.     Plaintiffs are informed, believe, and thereupon allege that the HIDC of their notes must have actual possession or be the endorsed payee since each note is a negotiable instrument. Plaintiffs are informed, believe, and thereupon allege that none of the Defendants herein and none of the investors of the REITs are HIDCs or endorsed payees of Plaintiffs' notes, as a result of a complete failure of the lenders and investors involved to comply with the UCC and California recording statutes and New York trust law.

60.     In a typical securitization transaction, mortgage loans are transferred by loan "Originators" to a "Sponsor." The "Sponsor," in turn, sells the mortgage loans to a "Depositor," a single-purpose entity. When the Sponsor acts in a selling capacity, it is often referred to as a "Seller," as well as a Sponsor. The Depositor, in turn, deposits the loans into the securitization trust ["REMIC"], pursuant to the PSA.

61.     The parties to the PSA generally are the Seller, the Depositor, the "Master Servicer," which services the mortgage loans and/or monitors the servicing of the mortgage loans by sub-servicers, and the "Trustee" who administers the trust that is established pursuant to the PSA.

62.     Loans are pooled and placed into REMIC's for income tax purposes. A REMIC is an "SPV" or Special Purpose Vehicle that is treated by the IRS as a "QSPE" or Qualifying Special Purpose Entity. It specifically was designed by Congress to allow the vehicle to not be taxed as the

11

1   cash flows through the vehicle and distributed to the investor and certificate holders. It is like an S

2   Corp where there is no double taxation.

3         63.    PSAs only allow loans to be placed into a REMIC for two years after the set-up of

4   the Trust due to tax implications. You can only substitute in loans for two years thereafter, and if

5   there is non-compliance with the PSA, the penalty is 100% of the face value of the asset in tax

6   penalties.

7         64.    Plaintiffs are informed and believe and thereupon allege that their loans have been

8   illegally substituted into and out of these loan trusts in direct violation of the PSAs and relevant

9   state statutes in order to cure deficiencies with the chain of title that never should have occurred to

10  begin with. Defendants have also used MERS to cure these title defects.

11        65.    Moreover, Plaintiffs allege that Defendants have been collecting monthly loan

12  payments as purported "servicers" of Plaintiffs' subject loans for trusts which had no ownership

13  interest whatsoever in Plaintiffs' notes, because the particular trusts have been long closed and thus

14  inactive under the terms of the relevant PSA. In other words, it was impossible for any subject loan

15  to be placed into the trust at issue such that the trust would have any ownership interest in the loan

16  in question.

17        66.    The original lenders have been and are harming Plaintiffs by transferring or

18  purporting to transfer ownership of Plaintiffs' loans to entities that can no longer accept them, and

19  thus Defendants have no ownership interest in such loans, nor any "servicer" rights, either. Under

20  strict REMIC rules a loan must follow a specific protocol in order to become property of a REMIC

21  trust.

22        67.    The procedure for placing a note into a REMIC are as follows:

23            a.    The Originator/Lender endorses the Note in blank to the Sponsor/Seller;

24            b.    The Seller assigns the Note to the Depositor/Purchaser who ensures that all of

25                the trust assets are actually deposited into the REMIC;

26            c.    The Depositor assigns all of the Notes and Deeds of Trust/Mortgages into the

27                name of the Issuing Entity;

28

COMPLAINT FOR DAMAGES

d.  The Issuing Entity is the newly formed REMIC that obtains an issuer number from the SEC to issue Certificates to Investors;

e.  The Issuing Entity hires an independent Trustee to become the Custodian of the Trust, and it is the Trustee's job to supervise the activities of the Trust and to ensure that the Certificate Holders/Investors ("True Owners") of the loans are paid based on the Certificate grades they purchased;

f.  The Trustee hires a Master Servicer and Sub-Servicers to collect mortgage payments and service the loans on behalf of the Trust; and

g.  In the event of a foreclosure action, the REMIC Trustee must follow proper foreclosure procedures as laid out in the PSA.

68.  It is standard in the securitization industry and the secondary markets to endorse a note to blank. Most often times the PSA requires the Depositor to endorse the Note to blank; in other words, it is not endorsed to a person or entity, it is endorsed in blank, making the Note a bearer instrument. However, with this endorsement, the PSA requires that the Depositor transfer the Note to the Trustee for the benefit of the certificate holders.

69.  A "Custodian" is sometimes a party to the PSA and sometimes enters into a separate Custodial Agreement with the Trustee or the Trustee can act as both if so designated in the PSA.

70.  Pursuant to the Custodial Agreement, the Custodian maintains possession of the loan files on behalf of the Trustee.

71.  An "Underwriter" typically enters into an Underwriting Agreement with the Depositor pursuant to which the Underwriter commits to purchase certain of the trust certificates and/or notes issued by the trust. In turn, the trust certificates and/or notes are sold to investors by the Underwriter(s) pursuant to a Registration Statement or Prospectus filed with the SEC.

72.  When the transaction is complete, the Trust files a Form 8-K with the SEC. The form is accompanied by the documents involved in the securitization transaction.

73.  Trust certificates are frequently issued in different classes. The different classes are associated with different payment terms, and different levels of risk. One loan can be placed in

13

1   multiple classes of securities, or "Tranches."  The terms, including payment schedule, distribution

2   priority, and allocation of losses, and the level of risk attributable to each class of certificates, or

3   tranche, are defined in the PSA and related exhibits, and in the Prospectus and Prospectus

4   Supplements.

5        74.    When a loan is placed into a tranche there can be more than one owner of the

6   security since the loan has been chopped up into smaller pieces and listed as security in different

7   classes of certificates based on risk.  The relative risk associated with any class, or tranche, of the

8   trust certificates may be set by various devices, including credit enhancements, the subordination

9   of lower level tranches through an agreement to absorb losses first, the over-collateralization of

10  loan pools in excess of the aggregate amount of the trust certificates, or the creation of an excess

11  spread fund to cover the difference between the interest collected from the pooled mortgage notes

12  and the amounts owed to investors who purchase the trust certificates.

13       75.    Subordinating the right of certain of the trust certificates to receive cash flow from

14  the pooled mortgage until senior trust certificates have been paid, or allocating the cash flow from

15  the pooled mortgages until senior certificates have been paid, or allocating the cash flow from the

16  pooled mortgages to different levels of trust certificates may be employed to create a tiered

17  structure known as a "Waterfall."

18       76.    Losses from mortgage defaults, delinquencies, or other factors may be allocated in

19  reverse seniority, with the junior tranches incurring losses first until their interests are reduced to

20  zero.

21       77.    Each class of trust certificates or tranche may have a credit rating issued by one or

22  more nationally recognized statistical rating organizations who rate the likelihood of payment of

23  interest and principal owed to the tranche, based on their internal projections of expected losses

24  from the loan pool.

25       78.    Securitization transactions involving government sponsored entities such as Fannie

26  Mae and Freddie Mac follow the same general pattern involving the pooling of loans and sale of

27  securities to investors, although the terminology and intermediate entities may differ.

28

79.     In simple terms, in a securitization transaction, the loan is made by the "originator," and then sold into the market. Ownership of the loan is transferred to a trust. Certain files, including the original note and original deed of trust are maintained by a custodian or the trustee. The loan is serviced by the servicer, who collects the payments, keeps the payment history, and initiates (but typically does not conduct) foreclosure sales. Participants in the trust earn income, and absorb losses, according to the terms of the trust and associated contracts.

80.     Defendants, and each of them, wrongfully acted and continue to act as if they are either the owner, beneficiary, successor, assignee or servicer, or have some other right, title, or interest in Plaintiffs' notes and deeds of trust, when, in reality, they have no basis to assert any such right, title or interest.

81.     As a result of Defendants' improper and unsubstantiated claim of being "servicers," Plaintiffs were wrongfully dispossessed of thousands of dollars of misapplied "loan payments" that Defendants had no right to collect.

82.     As an example, Countrywide Financial Corporation ("Countrywide"), along with its subsidiary Countrywide Home Loans, Inc., was -- at the time of the mortgage collapse of 2008 -- the largest maker of home loans in the country.  In Note 2 to the Financial Statements in the Countrywide Annual Report on Form 10-K for the Fiscal Year ending December 31, 2006 (filed 3/1/2007) ("Countrywide 2006 Form 10-K"), on page F-10, Countrywide stated it routinely "[sold] most of the mortgage loans it produces in the secondary mortgage market, primarily in the form of securities, and to a lesser extent as whole loans."

83.     "Nearly all of the mortgage loans that we originate in our Mortgage Banking and Capital Markets Segments are sold into the secondary mortgage market." (Countrywide 2006 Form 10, at 37.)

84.     "Most of the mortgage loans that we produce are sold in the secondary mortgage market, primarily in the form of MBS and ABS." (*Id.* at 117.) "Our mortgage loan securitizations are normally structured as sales as specified by SFAS 140, and as such involve the transfer of the mortgage loans to qualifying special-purpose entities that are not subject to consolidation." 9Id. at 122.)

15

85.     Bank of America ("BOA") eventually took over Countrywide.  The BOA 2010 Form 10-K informed the public that Defendants have no idea of the "chain of title" of the investors and owners of the notes and deeds of trust at issue in this litigation.  The BOA 2010 Form 10-K advises the SEC, investors and public as follows:

> Many derivative instruments are individually negotiated and non-standardized, which can make exiting, transferring or settling some positions difficult. Many derivatives require that we deliver to the counterparty the underlying security, loan or other obligation in order to receive payment. In a number of cases, we do not hold, and may not be able to obtain, the underlying security, loan or other obligation. This could cause us to forfeit the payments due to us under these contracts or result in settlement delays with the attendant credit and operational risk, as well as increased costs to us.
>
> [page 13]
>
> If certain required documents are missing or defective, or if the use of MERS is found not to be effective, we could be obligated to cure certain defects or in some circumstances be subject to additional costs and expenses, which could have a material adverse effect on our cash flows, financial condition and results of operations.
>
> [page 35]

86.     Just like Countrywide and Bank of America, Plaintiffs are informed and believe and thereon allege that Defendants herein no longer own the notes and deeds of trust they seek to enforce against Plaintiffs, and/or they no longer have "servicer" rights or authority to be collecting money from Plaintiffs in the form of loan payments, if indeed they ever had such authority.

87.     Plaintiffs allege that the securitization process – or failed securitization process -- described above for each home loan at issue herein resulted in the subject notes being *irreparably split* from their corresponding trust deeds.  This was the final result of securitization (or "non-securitization") in each case because as each note and deed were split and split again and then not placed into each designated pool in a timely matter as required the respective PSAs and by law, MERS and the original trustee in each case ceased to be nominal holders of each deed, being that they were no longer agents of the original lenders in question.

88.     As a direct and proximate result, Defendants herein ceased having the authority to service Plaintiffs' home loans at issue, and each original designated trustee ceased having any authority to foreclose and/or to assign such rights to a successor trustee.  (See, e.g., *Cervantes v. Countrywide Home Loans, Inc.* (9th Cir. 2011) 656 F.3d 1034.)

### FIRST CAUSE OF ACTION

#### Fraud

#### *(By All Plaintiffs Against All Defendants)*

89.     Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

90.     Defendants herein, and each of them, have delivered to Plaintiffs, and continue to deliver, monthly loan statements purporting to state that Defendants are the servicers of the subject loans at issue herein and that, therefore, each Plaintiff must make monthly payments to Defendants under the terms of the home loans at issue.

91.     In truth, Defendants ceased being servicers of the subjects loans, if they ever were, when the ownership and chain of title of the subject notes and deeds of trust became broken and disjointed as a result of the jumbled mess of attempted pooling, securitization and reselling of loans as described above, creating a serious question and dispute as to the very ownership and possession of the notes and deeds at issue herein.

92.     At the same time, with ownership and possession now in question and very much in dispute, regardless of whether Defendants ever had any direct or agency authority to be collecting monthly payments from Plaintiffs, Defendants ceased to have any such authority when their principal or principals no longer had ownership or possession of the notes and deeds of trust at issue herein, or no longer were the holders or holders in due course of such instruments and documents.  Thus these principals no longer had any authority to demand payment on the notes at issue and, thus, Defendants no longer had any authority to demand such monies on a monthly basis on behalf of such principal(s).  Further, Defendants no longer had any authority, if ever they had it, to be purportedly negotiating with Plaintiffs regarding any modifications of their home loans.

1    93.    Defendants knew and have known for some time that they had no authority to be

2    collecting loan payments and/or to be offering loan modifications to Plaintiffs for the reasons

3    stated above, but continued to do so solely motivated by greed, i.e., the desire to collect from

4    Plaintiffs even more unauthorized loan payments and modification fees.

5    94.    The specifics of the "who, what, when, where and how" for the fraud that

6    Defendants have perpetrated upon each Plaintiff for years, and continue to so perpetrate, are easy

7    to discern in that they are contained within each loan statement that Defendants have been sending

8    and continue to send to each Plaintiff on a monthly basis, wrongfully demanding payment for each

9    Plaintiff's home loan at issue herein.

10   95.    Each such loan statement sent by Defendants to Plaintiffs has one or more

11   Defendants' names on it, or the name of a Defendant co-conspirator.  Further, each monthly

12   statement states either expressly or impliedly that a certain amount of money is owed by each

13   Plaintiff on the account of each home loan at issue and other details about each loan, the deadline

14   of when each monthly payment must be sent, and Defendants' address for sending such payments.

15   96.    Defendants knew the statements made in their monthly loan billing sent to each

16   Plaintiff were false, and Defendants made such statements in order to induce Plaintiffs to rely on

17   such printed misrepresentations regarding whom to pay what amount as a monthly loan payment

18   and/or loan modification fee, and these misrepresentations made by Defendants did indeed cause

19   Plaintiffs, and each of them, to reasonably rely on Defendants' printed misrepresentations that

20   Defendants were authorized to be collecting loan payments and modification fees.  Plaintiffs

21   further continued to pay unknown sums to Defendants in reliance on such misrepresentations.

22   97.    In each case, for each Plaintiff, Defendants made regular and monthly fraudulent

23   misrepresentations to Plaintiffs in the form of monthly printed loan statements that purported to

24   state that each Plaintiff was indebted to Defendants and/or their agents or principals under the

25   loans and mortgages at issue herein, and that therefore, each Plaintiff was required to make a

26   monthly payment to one or more Defendants in order to avoid default or foreclosure.  In truth,

27   these regular and monthly printed statements delivered to Plaintiffs were false and Defendants

28   knew they were false at the time each such statement was made.

18

COMPLAINT FOR DAMAGES

98.     Further, Plaintiffs allege that Defendants herein, and each of them, concealed from Plaintiffs the existence of failed assignments of notes to REITs, fraudulently back-dated, robo-signed and recorded faulty deeds and assignments, and concealed other fatal "chain of title" defects (including bank allonges) so that Defendants could continue to collect unwarranted payments from Plaintiffs and then, ultimately, wrongfully foreclose on the subject properties while having no standing or legal right to do so.

99.     A further form of fraud was perpetrated by Defendants upon each Plaintiff when, after sending monthly loan statements demanding payment as a purported "servicer" of each loan in question, Defendants never credited each Plaintiff's loan account with the monies that Plaintiffs sent in response to Defendants' monthly written demands for payment.

100.     As a result of Defendants' fraudulent acts described above, each Plaintiff incurred general and special damages in an amount according to proof.

101.     All inclusive, each Plaintiff is seeking a combined *total recovery from all causes of action and all manner of recovery* -- including general damages, special damages, and any other compensation or disgorgement -- of no more than $75,000.00 total. (This amount also includes the monetary value of any non-monetary items sought or awarded.) *It is Plaintiffs' desire and decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.* Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees. Plaintiffs are *not* seeking injunctive relief. Plaintiffs are *not* seeking declaratory relief. Plaintiffs are *not* seeking to rescind or otherwise cancel any of the loans described herein. Finally, Plaintiffs are *not* seeking to challenge the ownership rights of any real property they may currently own or that they may have previously owned in the past.

## SECOND CAUSE OF ACTION

### Conspiracy to Commit Fraud

### *(By All Plaintiffs Against All Defendants)*

102.     All of the above Paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

1    103.   Plaintiffs allege that each of the wrongful acts or omissions described in the First

2    Cause of Action for Fraud above was either performed by each Defendant herein, named or

3    unnamed, or ratified and adopted by each Defendant after its occurrence.  Further, those

4    Defendants that did not actively perform the acts or omissions described here did affirmatively aid

5    and abet the other Defendants in the performance of such fraudulent acts or omissions, either

6    before, during or after the fact.

7        104.   Finally, each Defendant herein, named or unnamed, did knowingly derive some

8    form of profit or benefit from the acts and omissions described herein.  All Defendants agreed to

9    work together in the conspiracy and/or joint enterprise described in this Cause of Action based

10   upon an agreement that was written, oral or implied by the conduct of the parties.  Accordingly,

11   each Defendant, named or unnamed, should be held liable for conspiracy to commit the fraud as

12   alleged in the First Cause of Action.

13       105.   Plaintiffs suffered general and special damages according to proof as a direct and

14   proximate result of Defendants' conspiracy to commit the repeated and serial acts of fraud against

15   these Plaintiffs as described.

16       106.   All inclusive, each Plaintiff is seeking a combined *total recovery from all causes of*

17   *action and all manner of recovery* -- including general damages, special damages, and any other

18   compensation or disgorgement -- of no more than $75,000.00 total.  (This amount also includes the

19   monetary value of any non-monetary items sought or awarded.)  *It is Plaintiffs' desire and*

20   *decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this*

21   *Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.*

22   Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees.  Plaintiffs are *not*

23   seeking injunctive relief.  Plaintiffs are *not* seeking declaratory relief.  Plaintiffs are *not* seeking to

24   rescind or otherwise cancel any of the loans described herein.  Finally, Plaintiffs are *not* seeking to

25   challenge the ownership rights of any real property they may currently own or that they may have

26   previously owned in the past.

27

28

COMPLAINT FOR DAMAGES

## THIRD CAUSE OF ACTION

### Conversion

### (By All Plaintiffs Against All Defendants)

107.    All of the above Paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

108.    Defendants have demanded and received payments from Plaintiffs based upon the claim of these Defendants appearing in the monthly loan statements that they sent to each Plaintiff that such monies are owed on the loans and promissory notes at issue herein.  These Defendants have further demanded and received from Plaintiffs monies or imbursements for late charges, penalty fees and trial loan modification payments.

109.    In truth, on information and belief, for reasons set forth above, these Defendants had and have no legal right to be demanding such payments from Plaintiffs for any loans or promissory notes or loan modifications at issue herein.  These Defendants are not holders or owners of the promissory notes in question and they no longer know who is.  Further, Defendants are not the authorized representative or agents or "servicers" for the holders or owners of the promissory notes in question.

110.    Further, in truth, none of the monies collected from these Plaintiffs by these Defendants was ever credited for the benefit of the individual Plaintiff involved in that it was not used to pay down that Plaintiff's (or any Plaintiff's) principal and/or interest purportedly due on his or her promissory note.

111.    Thus, in taking monies from Plaintiffs as described above, these Defendants are liable to Plaintiffs herein for conversion, i.e., the act of dominion wrongfully exerted over another person's personal property.

112.    These claims of conversion for each Plaintiff are based upon the following facts: 1) each Plaintiff had ownership and the right to possession of the monies wrongfully converted from him by Defendants as described above; 2) the amount converted from each Plaintiff by Defendants is a sum certain and easily discernible by totaling the amounts billed by Defendants and delivered to Defendants by each Plaintiff since Defendants began sending monthly loan

1    statements to each Plaintiff; 3) the monies given by each Plaintiff to Defendants in response to

2    loan statements sent to them by Defendants was in each case for each Plaintiff given to Defendants

3    to hold for that Plaintiff *in trust,* to be applied in each case for the benefit of each Plaintiff in

4    paying down the interest and/or principal due on that Plaintiff's home mortgage account only; 4)

5    no money collected by Defendants from these Plaintiffs was credited to the benefit of the

6    individual Plaintiff involved for the paydown of any principal or interest purportedly due on that

7    Plaintiff's note; 5) Defendants took the payments received from each Plaintiff sent in response to a

8    monthly loan statement and converted them for their own use in a voracious and greedy attempt to

9    amass as much unearned cash as possible, at the expense of Plaintiffs; and 6) as a direct and

10   proximate result of the conversion committed by Defendants, each Plaintiff suffered general and

11   special damages, including loss of the money that was taken from them by these Defendants

12   through this above-described subterfuge, according to proof.

13           113.    Each Plaintiff is further entitled to restitution of those amounts wrongfully

14   converted from him or her.

15           114.    All inclusive, each Plaintiff is seeking a combined *total recovery from all causes of*

16   *action and all manner of recovery* -- including general damages, special damages, and any other

17   compensation or disgorgement -- of no more than $75,000.00 total.  (This amount also includes the

18   monetary value of any non-monetary items sought or awarded.)  *It is Plaintiffs' desire and*

19   *decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this*

20   *Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.*

21   Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees.  Plaintiffs are *not*

22   seeking injunctive relief.  Plaintiffs are *not* seeking declaratory relief.  Plaintiffs are *not* seeking to

23   rescind or otherwise cancel any of the loans described herein.  Finally, Plaintiffs are *not* seeking to

24   challenge the ownership rights of any real property they may currently own or that they may have

25   previously owned in the past.

26

27

28

COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### Conspiracy to Convert

### (*By All Plaintiffs Against All Defendants*)

115. All of the above paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

116. Plaintiffs allege that each of the wrongful acts described in the Third Cause of Action for Conversion above was either performed by each Defendant herein, named or unnamed, or ratified and adopted by each Defendant after its occurrence. Further, those Defendants that did not actively perform the acts described herein did affirmatively aid and abet the other Defendants in the performance of such acts of omissions, either before, during or after the fact

117. Finally, each Defendant herein, named or unnamed, did knowingly derive some form of profit or benefit from the acts and omissions described herein. All Defendants agreed to work together in the conspiracy and/or joint enterprise described in this Cause of Action based upon an agreement that was written, oral or implied by the conduct of the parties. Accordingly, each Defendant, named or unnamed, should be held liable for conspiracy to commit the conversion as alleged in the Third Cause of Action.

118. Plaintiffs have suffered general and special damages as a direct and proximate result of this conspiracy of all Defendants to commit repeated and serial acts of conversion against these Plaintiffs as described herein.

119. All inclusive, each Plaintiff is seeking a combined *total recovery from all causes of action and all manner of recovery* -- including general damages, special damages, and any other compensation or disgorgement -- of no more than $75,000.00 total. (This amount also includes the monetary value of any non-monetary items sought or awarded.) *It is Plaintiffs' desire and decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.* Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees. Plaintiffs are *not* seeking injunctive relief. Plaintiffs are *not* seeking declaratory relief. Plaintiffs are *not* seeking to rescind or otherwise cancel any of the loans described herein. Finally, Plaintiffs are *not* seeking to

1  challenge the ownership rights of any real property they may currently own or that they may have

2  previously owned in the past.

### FIFTH CAUSE OF ACTION

*Violation of Rosenthal Fair Debt Collection Practices Act (Civ. Code, §§ 1788, et seq.)*

**(By All Plaintiffs Against All Defendants)**

6      120.    Plaintiffs hereby allege and incorporate herein by reference, each and every other

7  paragraph contained in this Complaint as if the same were fully set forth herein.

8      121.    The California Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788, et

9  seq.) ["Rosenthal Act"] serves "to prohibit debt collectors from engaging in unfair or deceptive

10  acts or practices in the collection of consumer debts and to require debtors to act fairly in entering

11  into and honoring such debts." (Civ. Code § 1788.1(b).)

12      122.    The Rosenthal Act protects consumers from unfair or deceptive debt collection acts

13  and practices for "consumer debts" created through transactions in which "property, services or

14  money is acquired on credit...primarily for personal, family, or household purposes." (Civ. Code,

15  §§ 1788.1, 1788.2, subds. (e)-(f).)

16      123.    Further, pursuant to Civil Code section 1788.17, the Rosenthal Act compels debt

17  collectors to comply with the provisions of Sections 1692b to 1692j – and be subject to the

18  remedies of Section 1692k -- of Title 15 of the United States Code, which is part of the federal Fair

19  Debt Collection Practices Act.

20      124.    Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the

21  ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt

22  collection." (Civ. Code, § 1788.2(c).)

23      125.    Thus, Defendants, when acting as servicers for the home loans at issue herein, were

24  and are "debt collectors" within the meaning of the Rosenthal Act in that they regularly, in the

25  course of their business engaged and engage in the collection of debt, i.e., the regular and monthly

26  payments made by each Plaintiff in response to monthly loan statements sent to each Plaintiff by

27  Defendants stating incorrectly and falsely that money was owed for payment of Plaintiffs' home

28

1    mortgages.  Plaintiffs have been making such payments to Defendants for years up until the

2    present.

3            126.    As set forth above, Defendants used deceptive, unfair and unconscionable means to

4    collect debts not owed to them by sending misleading and false letters and loan statements --

5    reflecting incorrect and/or inflated amounts due -- to each Plaintiff herein and by making phone

6    calls to each Plaintiff demanding payment for such amounts.  Defendants also published to credit

7    reporting agencies incorrect and false information about the amounts owed to them by each

8    Plaintiff.  Such actions are violations of 15 USC § 1692e, subds. (2)(A) and (10), and 1692f(1), all

9    as incorporated into the Rosenthal Act.

10           127.    Further, Defendants made false reports to credit agencies about each Plaintiff's

11   credit standing, falsely increasing the amount of each Plaintiff's mortgage debt, falsely stating that

12   a debt was owed to Defendants, and falsely stating each Plaintiff's payment history.  This is a

13   violation of 15 USC § 1692e(8) under the Rosenthal Act.

14           128.    Finally, Defendants increased the amount of each Plaintiff's purported mortgage

15   debt by stating amounts not permitted by law or contract, including but not limited to, inspection

16   fees, excessive service fees, attorney's fees, and late charges.  This is a violation of Section

17   1788.13(e) of the Rosenthal Act.

18           129.    As a direct and proximate result of the conversion committed by Defendants, each

19   Plaintiff suffered general and special damages according to proof.  Each Plaintiff is further entitled

20   to restitution of those amounts wrongfully converted from him or her.

21           130.    All inclusive, each Plaintiff is seeking a combined *total recovery from all causes of*

22   *action and all manner of recovery* -- including general damages, special damages, and any other

23   compensation or disgorgement -- of no more than $75,000.00 total.  (This amount also includes the

24   monetary value of any non-monetary items sought or awarded.)  *It is Plaintiffs' desire and*

25   *decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this*

26   *Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.*

27   Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees.  Plaintiffs are *not*

28   seeking injunctive relief.  Plaintiffs are *not* seeking declaratory relief.  Plaintiffs are *not* seeking to

COMPLAINT FOR DAMAGES

1    rescind or otherwise cancel any of the loans described herein.  Finally, Plaintiffs are *not* seeking to

2    challenge the ownership rights of any real property they may currently own or that they may have

3    previously owned in the past.

4                                **SIXTH CAUSE OF ACTION**

5              *Unfair Business Practices (Bus. & Prof. Code §§ 17200, et seq.)*

6                        **(By All Plaintiffs Against All Defendants)**

7          131.   Plaintiffs hereby allege and incorporate herein by reference all previous paragraphs

8    of this Complaint as if they were fully set forth herein.

9          132.   California's Unfair Competition Law ["UCL"] (Bus. & Prof. Code, § 17200, et

10   seq.) defines unfair competition as "any unlawful, unfair or fraudulent business act or practice."

11   (*Id., §17200.*)

12         133.   Defendants' actions as described above in the First through Fifth Causes of Action

13   – including all fraud and conversion perpetrated and the conspiracies related thereto, plus multiple

14   violations of the Rosenthal Act, as alleged above -- constitute unlawful *and* unfair *and* illegal

15   business practices within the meaning of the California UCL.

16         134.   As a separate and distinct basis for alleging violation of the UCL, unconnected to

17   any statute or Cause of Action listed above, Plaintiffs submit that Defendants are further liable for

18   unfair and fraudulent business practices by accepting loan payments from Plaintiffs herein without

19   crediting any portion of the monies collected to the benefit of any Plaintiff herein or to the benefit

20   of any home loan account at issue herein.

21         135.   As a direct and proximate result of the fraud and concealment, conversion and

22   conspiracies as alleged, plus the numerous Rosenthal violations, each Plaintiff has suffered

23   material financial injury in fact, including the loss of thousands of dollars paid to Defendants in the

24   mistaken belief that it was owed to them for their home loans now at issue.

25         136.   As a result of Defendant's unfair business practices, Plaintiffs are entitled to

26   restitution of all sums received by Defendants through fraud and deceit and conversion and statute

27   violation including, without limitation, the principal and interest payments made by Plaintiffs to

28

COMPLAINT FOR DAMAGES

1  Defendants on the mortgage loans at issue herein because Defendants wrongfully claimed such

2  monies were owed to them or their principals.

3        137.   Plaintiffs allege that each of the wrongful acts or omissions described in this Cause

4  of Action was either performed by each Defendant herein, named or unnamed, or ratified and

5  adopted by each Defendant after its occurrence. Further, those Defendants that did not actively

6  perform the acts or omissions described here did affirmatively aid and abet the other Defendants in

7  the performance of such acts of omissions, either before, during or after the fact.

8        138.   Finally, each Defendant herein, named or unnamed, did knowingly derive some

9  form of profit or benefit from the acts and omissions described herein. All Defendants agreed to

10  work together in the conspiracy and/or joint enterprise described in this paragraph based upon an

11  agreement that was written, oral or implied by the conduct of the parties. Accordingly, each

12  Defendant, named or unnamed, should be held liable for the acts and omissions complained of.

13        139.   As a result of the fraud, concealment, conversion and theft described herein, each

14  Plaintiff has suffered material financial injury in fact, including financial loss.

15        140.   As a result of Defendants' unlawful *and* unfair *and* illegal business practices,

16  Plaintiffs are entitled to restitution for all sums paid by Plaintiffs to Defendants under false or

17  fraudulent pretenses.

18        141.   All inclusive, each Plaintiff is seeking a combined ***total recovery from all causes of***

19  ***action and all manner of recovery*** -- including general damages, special damages, and any other

20  compensation or disgorgement -- of no more than $75,000.00 total. (This amount also includes the

21  monetary value of any non-monetary items sought or awarded.) ***It is Plaintiffs' desire and***

22  ***decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this***

23  ***Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.***

24  Plaintiffs are ***not*** seeking punitive damages, statutory damages or attorney's fees. Plaintiffs are ***not***

25  seeking injunctive relief. Plaintiffs are ***not*** seeking declaratory relief. Plaintiffs are ***not*** seeking to

26  rescind or otherwise cancel any of the loans described herein. Finally, Plaintiffs are ***not*** seeking to

27  challenge the ownership rights of any real property they may currently own or that they may have

28  previously owned in the past.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (*By All Plaintiffs Against All Defendants*)

142. All of the above Paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

143. Through their conduct as described in this Complaint and within the Causes of Action above, all Defendants herein did unjustly enrich themselves by taking advantage of each Plaintiff and taking his or her money under false and fraudulent pretenses.

144. Plaintiffs allege that each of the wrongful acts or omissions described above was either performed by each Defendant herein, named or unnamed, or ratified and adopted by each Defendant after its occurrence. Further, those Defendants that did not actively perform the acts or omissions described here did affirmatively aid and abet the other Defendants in the performance of such acts of omissions, either before, during or after the fact.

145. Finally, each Defendant herein, named or unnamed, did knowingly derive some form of profit or benefit from the acts and omissions described herein. All Defendants agreed to work together in the conspiracy and/or joint enterprise described in this paragraph based upon an agreement that was written, oral or implied by the conduct of the parties. Accordingly, each Defendant, named or unnamed, should be held liable for the acts and omissions complained of.

146. "Unjust enrichment" as a claim is recognized as a way of stating a claim for restitution, the elements of which are receipt of a benefit and unjust retention of it at the expense of another. (See, e.g., *Lectrodryer v. Seoulbank* (2000) 77 Cal.App.4th 723, 726.)

147. An individual is required to make restitution if he or she is unjustly enriched at the expense of another and it would be unjust for the person to retain the benefit. (See, e.g., *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662-1663.)

148. Here, Plaintiffs ask that each Defendant be ordered to pay back to each Plaintiff any and all monies unjustly received from him or her as the result of Defendants' wrongful actions.

149. All inclusive, each Plaintiff is seeking a combined ***total recovery from all causes of action and all manner of recovery*** -- including general damages, special damages, and any other

1  compensation or disgorgement -- of no more than $75,000.00 total.  (This amount also includes the

2  monetary value of any non-monetary items sought or awarded.)  *It is Plaintiffs' desire and*

3  *decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this*

4  *Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.*

5  Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees.  Plaintiffs are *not*

6  seeking injunctive relief.  Plaintiffs are *not* seeking declaratory relief.  Plaintiffs are *not* seeking to

7  rescind or otherwise cancel any of the loans described herein.  Finally, Plaintiffs are *not* seeking to

8  challenge the ownership rights of any real property they may currently own or that they may have

9  previously owned in the past.

## PRAYER FOR RELIEF

11  WHEREFORE, each Plaintiff prays for judgment against Defendants, and each of them, as

12  follows:

13  1.  For general damages according to proof;

14  2.  For special damages according to proof;

15  3.  For restitutionary damages according to proof;

16  4.  For pre and post-judgment interest;

17  5.  For such other relief that the Court may deem just and proper.

19  Dated: July 15, 2014                REAL ESTATE LAW CENTER, PC

21  By:

22  Erikson M. Davis
    Attorneys for Plaintiffs

## DEMAND FOR TRIAL BY JURY

24  Plaintiffs hereby demand a jury trial for all issues so triable.

25  Dated: July 15, 2014                REAL ESTATE LAW CENTER, PC

27  By

28  Erikson M. Davis
    Attorneys for Plaintiffs

29

COMPLAINT FOR DAMAGES

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)**

Case Number _____

**BC 551788**

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
Your case is assigned for all purposes to the judicial officer indicated below. There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Michael Johnson | 56 | 514 |
| Hon. Terry A. Green | 14 | 300 | Hon Rolf M. Treu | 58 | 516 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Rita Miller | 16 | 306 | Hon. Mark Mooney | 68 | 617 |
| Hon. Richard E. Rico | 17 | 309 | Hon. William F. Fahey | 69 | 621 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Mary H. Strobel | 32 | 406 | | | |
| Hon. Michael P. Linfield | 34 | 408 | | | |
| Hon. Gregory Alarcon | 36 | 410 | **Hon. Emilie H. Elias** | **324** | **CCW** |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | | | |
| Hon. Frederick C. Shaller | 46 | 500 | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | |
| Hon. Deirdre Hill | 49 | 509 | | | |
| Hon. John L. Segal | 50 | 508 | | | |
| Hon. Mitchell L. Beckloff | 51 | 511 | **\*Provisionally Complex Non-Class Action Cases** | | |
| Hon. Susan Bryant-Deason | 52 | 510 | Assignment is Pending Complex Determination | 324 | CCW |
| Hon. Steven J. Kleifield | 53 | 513 | | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | |

**\*Complex**
All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on JUL 16 2014         SHERRI R. CARTER, Executive Officer/Clerk
By _____, Deputy Clerk

LACIV CCH 190 (Rev05/14)
LASC Approved 05-06
For Optional Use
**NOTICE OF CASE ASSIGNMENT**
**UNLIMITED CIVIL CASE**
Page 1 of 2

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev05/14)
LASC Approved 05-06
For Optional Use

**NOTICE OF CASE ASSIGNMENT –**

**UNLIMITED CIVIL CASE**

Page 2 of 2

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a.  The party requesting the Informal Discovery Conference will:

   i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

   ii.  Include a brief summary of the dispute and specify the relief requested; and

   iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b.  Any Answer to a Request for Informal Discovery Conference must:

   i.   Also be filed on the approved form (copy attached);

   ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

<table>
<tr><td>SHORT TITLE:</td><td>CASE NUMBER:</td></tr>
</table>

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:   FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER